FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 27, 2022

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JEFFREY S., | NO: 1:21-CV-03032-LRS |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, ACTING COMMISSIONER OF SOCIAL SECURITY,[1] | |
| Defendant. | |

BEFORE THE COURT are the parties' cross motions for summary judgment. ECF Nos. 12, 14. This matter was submitted for consideration without oral argument. Plaintiff is represented by Attorney D. James Tree. Defendant is

---

[1]Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER ~ 1

represented by Special Assistant United States Attorney David J. Burdett.  The

Court has reviewed the administrative record, the parties' completed briefing, and

is fully informed.  For the reasons discussed below, the Court **GRANTS**

Defendant's Motion for Summary Judgment, ECF No. 14, and **DENIES** Plaintiff's

Motion for Summary Judgment, ECF No. 12.

## JURISDICTION

Plaintiff Jeffrey S.[2] protectively filed an application for Supplemental

Security Income (SSI) on August 31, 2018, Tr. 70, alleging an onset date of

September 5, 2016, Tr. 169, due to posttraumatic stress disorder (PTSD), learning

disabilities, memory problems, difficulty focusing, paranoia, depression, anxiety,

substance abuse, attention hyperactivity disorder (ADHD), and hyperactivity, Tr.

208.  Plaintiff's applications were denied initially, Tr. 94-97, and upon

reconsideration, Tr. 102-08.  A hearing before Administrative Law Judge Chris

Stuber ("ALJ") was conducted on June 11, 2020.  Tr. 38-69.  Plaintiff was

represented by counsel and testified at the hearing.  *Id*.  The ALJ also took the

testimony of vocational expert Diane Kramer.  *Id*.  The ALJ entered an unfavorable

decision on July 29, 2020.  Tr. 20-33.  The Appeals Council denied review on

January 12, 2021.  Tr. 6-10.  Therefore, the ALJ's July 29, 2020 decision became

---

[2]In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's

first name and last initial, and, subsequently, Plaintiff's first name only, throughout

this decision.

ORDER ~ 2

the final decision of the Commissioner.  The matter is now before this Court

pursuant to 42 U.S.C. §§ 405(g); 1383(c).  ECF No. 1.

## BACKGROUND

The facts of the case are set forth in the administrative hearing and

transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner.

Only the most pertinent facts are summarized here.

Plaintiff was 37 years old at the alleged onset date.  Tr. 168-69.  Prior to his

SSI application, Plaintiff was incarcerated.  It was during this incarceration that he

completed his GED and received a certification in aerospace composites.  Tr. 46,

209.  Plaintiff's reported work history includes jobs as a general laborer at a

seafood processing plant, a stocker at a gas station, and a veterinary assistant.  Tr.

210.  At application, he stated that he stopped working on September 5, 2016,

because of his conditions.  Tr. 208.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social

Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

limited; the Commissioner's decision will be disturbed "only if it is not supported

by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159

(quotation and citation omitted).  Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four.  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged date of onset, September 5, 2016.  Tr. 22.

At step two, the ALJ found that Plaintiff had the following severe impairments: methamphetamine abuse; ADHD; PTSD; borderline intellectual functioning; and major depressive disorder with psychotic symptoms.  Tr. 22.

At step three, the ALJ found that, including Plaintiff's substance use, the severity of his impairments met the criteria of listing 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 23.

The ALJ then found that if Plaintiff stopped the substance use, his remaining limitations would cause more than a minimal impact on his ability to perform basic work activities; therefore, he would continue to have a severe impairment or combination of impairments at step two.  Likewise, the ALJ found that if Plaintiff

stopped the substance use, he would not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 25.

The ALJ then found that if Plaintiff stopped the substance use, he had the RFC to perform a full range of work at all exertional levels with the following nonexertional limitations:

> The claimant is able to understand, remember, and carryout 1-3 step tasks with only occasional changes in the work setting.  He should have no interaction with the public and only brief and superficial contact with coworkers and supervisors.  Within such parameters, he would be able to maintain concentration, persistence, and pace.

Tr. 27.  At step four, the ALJ found Plaintiff could not perform past relevant work.  Tr. 31.[3]

At step five, the ALJ found that if Plaintiff stopped the substance use, considering his age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that Plaintiff could perform, including laundry worker II, lab equipment cleaner, and cleaner II.  Tr. 32.

---

[3]Although the findings section of the ALJ's opinion states that Plaintiff "can perform past relevant work," this was clearly a typographical or scrivener's error as the ALJ's subsequent findings state that Plaintiff does not have past relevant work.  Tr. 31.

ORDER ~ 8

The ALJ found that Plaintiff's substance use disorder was a contributing factor material to the  determination of disability because he would not be disabled if he stopped the substance use.  Tr. 32.  Because the substance use disorder was a contributing factor material to the determination of disability, Plaintiff had not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of the decision.  Tr. 32-33.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him SSI under Title XVI.  ECF No. 12.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly found that substance use was a contributing factor material to disability;

2. Whether the ALJ properly addressed the medical opinions; and

3. Whether the ALJ properly addressed Plaintiff's symptom statements.

## DISCUSSION

**1.    Substance Use**

Plaintiff challenges the ALJ's finding that his substance use was a contributing factor material to disability.  ECF No. 12 at 3-9.

The Social Security Act bars payment of benefits when drug or alcohol abuse is a contributing factor material to a disability claim.  42 U.S.C. §§ 423(d)(2)(C) & 1382c(a)(3)(J); *Bustamante v. Massanari*, 262 F.3d 949 (9th Cir.

2001).  If there is evidence from an acceptable medical source that Plaintiff has a substance abuse disorder and the claimant succeeds in proving disability, the Commissioner must determine whether drug or alcohol abuse is *material* to the determination of disability.  20 C.F.R. § 416.935; S.S.R. 13-2p at ¶ 8(b)(i) (Feb. 20, 2013), *available at* 2013 WL 621536.  That is, the ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's drug or alcohol abuse, to determine if he would still be found disabled if he stopped using drugs or alcohol.  *Bustamante*, 262 F.3d at 955.  Drug or alcohol abuse is a materially contributing factor if the claimant would not meet the Social Security's definition of disability if claimant were not using drugs or alcohol.  20 C.F.R. § 416.935(b).

Here, the ALJ found that there was evidence from an acceptable medical source that Plaintiff had a substance use disorder.  Tr. 22 (finding methamphetamine abuse as a medically determinable severe impairment at step two).  The ALJ also found that, including this substance use, Plaintiff met listing 12.06 and was disabled at step three of the sequential evaluation process.  Tr. 23.  The ALJ then performed a second sequential evaluation process separating out the impact of Plaintiff's substance use and found that he was not disabled at step five if he stopped using substances.  Tr. 25-33.  Plaintiff presents two specific challenges to the ALJ's finding that substance use was a contributing factor material to the determination of disability: (1) the ALJ failed to properly assess functioning in the

absence of substance use during the relevant period; and (2) the ALJ failed to consider evidence indicating that Plaintiff's substance use was not material.  ECF No. 12 at 4-9.

### A.    Functioning

Plaintiff argues that the ALJ failed to properly assess functioning in the absence of substance use during the relevant period.  ECF No. 12 at 4-5.

To determine whether a claimant would be disabled if substance use stopped, S.S.R. 13-2p provides different guidance depending upon whether alleged disabling impairment is physical or mental.  For physical impairments, "evidence from a period of abstinence is the best evidence for determining whether a physical impairment(s) would improve to the point of nondisability."  S.S.R. 13-2p at ¶ 6(b).  Further, when considering a period of abstinence, it "does not have to occur during the period [the ALJ is] considering in connection with the claim as long as it is medically relevant to the period we are considering."  *Id*. at ¶ 6(b) n.18.  For mental impairments, S.S.R. 13-2p does not specifically provide that a period of abstinence is best evidence for determining whether the substance use is material, nor does it provide that evidence prior to the alleged disability period is relevant. *Id*. at ¶ 7.  Rather, to support a finding that substance use is material, S.S.R. 13-2p requires "evidence in the record that establishes that a claimant with a co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs."  *Id*. at ¶ 7(a).  However, when specifically

discussing how the ALJ is to consider periods of abstinence, S.S.R. 13-2p states

that periods of abstinence may still be relevant in cases including co-occurring

mental disorders:

> In all cases in which we must consider periods of abstinence, the claimant should be abstinent long enough to allow the acute effects of drug or alcohol use to abate. *Especially in cases involving co-occurring mental disorders*, the documentation of a period of abstinence should provide information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug and alcohol use abated. Adjudicators may draw inferences from such information based on the length of the period(s), how recently the period(s) occurred, and whether the severity of the co-occurring impairment(s) increased after the period(s) of abstinence ended. To find that [substance use] is material, we must have evidence in the case record demonstrating that any remaining limitations were not disabling during the period.

*Id.* at ¶ 9(b) (*emphasis added*).

First, Plaintiff argues that the ALJ failed to identify any period of abstinence

in the relevant period. ECF No. 12 at 4. However, according to S.S.R. 13-2p, the

ALJ was not required to consider a period of abstinence because Plaintiff only

alleged mental impairments. Despite not being required to consider such a period

of abstinence, the ALJ did consider the period that Plaintiff was incarcerated. Tr.

24 ("He testified that he did best in prison, where he could not use drugs, and said

his depression and anxiety decreased when he was not using and he had a job in

prison, at which he seems to have stabilized."). Plaintiff was released from prison

prior to the alleged date of onset on December 21, 2015. Tr. 56. At the hearing,

Plaintiff testified that he was in prison for four years, that he was not using

substances during those four years, and that it "was the best time of my life," because "I had enough time in a structured environment to make certain changes and it worked out well, but it didn't last when I got out." Tr. 51.  Plaintiff testified that while incarcerated, he was not on any medications, but did complete an inpatient drug program.  Tr. 51-52.  The ALJ asked whether or not Plaintiff was required to get a prison job once he completed the drug treatment program, and Plaintiff stated that he was not expected to have a job, but "I worked because I like working.  I worked almost the entire time that I was there, the whole four years." Tr. 52.  He further clarified that this work was at a rate of eight hours a day, five days a week.  Tr. 55.

Plaintiff argues that this testimony supports a finding that it was the structured environment of prison that led to improvement in his symptoms, and not the lack of substance use.  ECF No. 12 at 5.  However, Plaintiff's testimony can reasonably be interpreted to support a finding that the lack of substances led to a decrease in symptoms while incarcerated.  If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Since, the ALJ was not required to consider a period of abstinence in this case, the fact that he considered a period outside the relevant time period is not an error.  Furthermore, S.S.R. 13-3p does not require that periods of abstinence be during the relevant period; therefore, the ALJ will not disturb the ALJ's determination.

Second, Plaintiff argues that the ALJ failed to provide any explanation as to why the marked limitations in every "paragraph B" criteria with substance use changed to moderate limitations without substance use. ECF No. 12 at 4, 7-8. While the ALJ did not discuss the downgrade from marked to moderate limitations while discussing the moderate limitations, Tr. 26, he did provide an explanation for the higher rating while discussing the marked limitations, Tr. 24. The ALJ provided the following explanations for why the limitations were greater while Plaintiff was using substances:

> At the hearing, the claimant testified that when he is using drugs, he quickly loses jobs, makes poor decisions, and ends up in prison. He testified that he did best in prison, where he could not use drugs, and said his depression and anxiety decreased when he was not using and he had a job in prison, at which he seems to have stabilized. After prison, the claimant testified he had a job that he liked, and according to his testimony this job ended due to reasons not associated with his impairments. He even admitted that he historically has not been able to maintain employment due to his drug usage.

Tr. 24. Plaintiff argues that this is not an accurate representation of the testimony provided at the hearing. ECF No. 12 at 5. As addressed above, Plaintiff's testimony regarding his functional abilities in prison can be interpreted to be the result of abstinence from substances. He further testified that once out of prison he started working at Washington Crab on January 1, 2016. Tr. 56. He testified that he succeeded at that job because he was able to be left alone. Tr. 57. He further testified that he left the job because his friend was in a car accident and he became his caregiver. Tr. 57-58. He explained that he had been a caregiver to this friend

off and on for twenty years.  Tr. 58-59.  He stated that in the beginning of the twenty-year period, he "had two jobs and was doing well and then drugs got involved and so on."  Tr. 59.  Therefore, the ALJ's summary of Plaintiff's testimony is supported in the record.

Third, Plaintiff argues that the reason Plaintiff left his job at Washington Crab has no bearing on the materiality of his substance use.  ECF No. 12 at 5-6.  However, this job was on the heels of a four-year period of abstinence, and it lasted less than a month.  Tr. 197.  Therefore, it reasonably supports the ALJ's finding that Plaintiff's impairments without substance use did not prevent him from working.

## B.    Evidence

Plaintiff argues that the ALJ failed to consider evidence indicating that Plaintiff's substance use was not material.  ECF No. 12 at 5-9.  In doing so, he argues that the ALJ improperly considered the medical opinions of Dr. Moore, Dr. Widlan, Dr. Petaja, Dr. Burdge, and Dr. Metoyer, *Id*. at 6-7.

Frist, the ALJ asserts that the ALJ erred in the treatment of the medical opinions regarding the materiality of Plaintiff's substance use.  The ALJ relied on the opinion of Dr. Moore to support his determination that Plaintiff's substance use was a contributing factor material to his disability.  In 2010, Dr. Moore found that Plaintiff had marked to severe functional limitations, but that substance abuse treatment would likely improve Plaintiff's ability to function in the work setting.

Tr. 284.  Plaintiff argues that this opinion predates the alleged onset, and is of limited relevance.  ECF No. 12 at 6.  While the ALJ is accurate that medical opinions regarding functioning that predate the alleged onset date are of limited relevance, *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1165 (9th Cir. 2008), the ALJ can look outside the relevant period to assess whether or not a claimant's substance use is a contributing factor material to disability, S.S.R. 13-2p.  This 2010 opinion while Plaintiff was using substances juxtaposed by his subsequent success working while in prison and not using substances supports the ALJ's finding that Plaintiff's substance use is material.

Plaintiff challenges the weight provided to the other opinions in the record.  ECF No. 12 at 6-7.  However, the Court finds that the ALJ did not err in his treatment of these opinions.  *See infra*.  Therefore, the Court finds that the ALJ did not err in his determination that Plaintiff's substance use was a contributing factor material to the determination of disability.

## 2.    Medical Opinions

Plaintiff challenges the ALJ's treatment of the opinions of  Jan Lewis, Ph.D., David Widlan, Ph.D., Holly Petaja, Ph.D., Aaron Burdge, Ph.D, and Patrick Metoyer, Ph.D.  ECF No. 12 at 9-17.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must weigh medical opinion evidence.  *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL

168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new

regulations provide that the ALJ will no longer give any specific evidentiary

weight to medical opinions or prior administrative medical findings, including

those from treating medical sources.  20 C.F.R. § 416.920c(a).  Instead, the ALJ

will consider the persuasiveness of each medical opinion and prior administrative

medical finding, regardless of whether the medical source is an Acceptable

Medical Source.  20 C.F.R. § 416.920c(c).  The ALJ is required to consider

multiple factors, including supportability, consistency, the source's relationship

with the claimant, any specialization of the source, and other factors (such as the

source's familiarity with other evidence in the file or an understanding of Social

Security's disability program).  *Id.*  The regulations emphasize that the

supportability and consistency of the opinion are the most important factors, and

the ALJ must articulate how he considered those factors in determining the

persuasiveness of each medical opinion or prior administrative medical finding.  20

C.F.R. § 416.920c(b).  The ALJ may explain how he considered the other factors,

but is not required to do so, except in cases where two or more opinions are equally

well-supported and consistent with the record.  *Id.*

> Supportability and consistency are further explained in the regulations:
>
> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

1
2
3

(2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

4

20 C.F.R. § 404.1520c(c).[4]

5

**A.    Jan Lewis, Ph.D.**

6

On April 15, 2019, Dr. Lewis provided a psychological consultant opinion

7

as part of Plaintiff's reconsideration determination.  Tr. 86-90.  She found that

8

Plaintiff was capable of carrying out simple one to three step instructions, could

9

maintain concentration, persistence, and pace for up to two hours continuously,

10

could maintain adequate attendance, and completed a normal workday/workweek

11

within normal tolerances of a competitive workplace.  Tr. 89.  She opined that

12

Plaintiff would be able to interact with coworkers and supervisors on an

13

14

[4]The parties disagree over whether Ninth Circuit case law continues to be

15

controlling in light of the amended regulations, specifically whether an ALJ is still

16

required to provide specific and legitimate reasons for discounting a contradicted

17

opinion from a treating or examining physician.  ECF Nos. 12 at 10, 14 at 7-8.

18

This Court has previously concluded that the regulations displace Ninth Circuit

19

precedence.  *Emilie K. v. Saul*, No. 2:20-CV-00079-SMJ, 2021 WL 864869, *3-

20

4 (E.D. Wash. Mar. 8, 2021*), reversed on other grounds*, No. 21-35360 (9th Cir.

21

Dec. 10, 2021).

ORDER ~ 18

intermittent basis, working a job that is independent of others, and did not involve the public.  Tr. 90.  She further opined that Plaintiff was capable of adapting to occasional changes and hazard awareness would be limited when under the effects of substances.  Tr. 90.  The ALJ found this opinion to be persuasive.  Tr. 30.

Plaintiff challenges the ALJ's reliance on this opinion in forming the RFC determination because Dr. Lewis failed to meet the qualifications of a psychological consultant when he signed the opinion.  ECF No. 12 at 10. Regulations require that a psychological consultant be a licensed or certified psychologist at the independent practice level of psychology by the State in which he or she practices.  20 C.F.R. § 416.1016(d)(1).  On August 20, 2020, Jennifer Pasinetti from the Seattle Hearing Office entered a note in the file stating that "[t]he file includes a reconsideration determination signed by an individual who did not meet the qualifications of a psychologist consultant because s/he had a restricted license when s/he signed the determination."  Tr. 279.  Therefore, this opinion cannot be relied upon when forming the RFC determination.

However, any error resulting from the ALJ's reliance on this opinion is harmless.  *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").  The new regulations state that the ALJ is no longer required to defer or "give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from

your medical source."  20 C.F.R. § 416.920c(a).  These new Regulations were

enacted to steer ALJs away from articulated weight given to opinions, and to focus

on the objective evidence in the record: "Courts reviewing claims under our

current rules have focused more on whether we sufficiently articulate the weight

we gave treating source opinions, rather than on whether substantial evidence

supports our final decision," 82 Fed. Reg. at 5853; and "Our intent in these rules is

to make it clear that it is never appropriate under our rules to 'credit-as-true' any

medical opinion" 82 Fed. Reg. at 5858.  Therefore, whether Dr. Lewis qualified as

a medical consultant under the Regulations is harmless so long as the ALJ's RFC

determination is supported by substantial evidence.  The Court finds that it is.  As

discussed at length above, Plaintiff has demonstrated an ability to maintain

competitive work eight-hours a day, five days a week when he abstains from

substance use.  Furthermore, as discussed at length below, the ALJ's determination

that the medical opinions of a more restrictive RFC are not persuasive is supported

by substantial evidence.

## B.    Opinions from Department of Social and Health Services

The ALJ found the opinions from evaluators and reviewers from DSHS were

not persuasive.  Tr. 30-31.

On February 26, 2018, Dr. Widlan evaluated Plaintiff and completed  a

Psychological Psychiatric Evaluation for DSHS on March 1, 2018.  Tr. 297-309.

During the evaluation, Plaintiff reported "a long history of meth use.  He reported

he most recently underwent treatment in prison in April 2012." Tr. 298.  He diagnosed Plaintiff with PTSD, major depressive disorder, methamphetamine use disorder (continuous), rule out dependent personality disorder, and rule out borderline intellectual functioning vs. ADHD.  Tr. 298.  He opined that Plaintiff had a marked impairment in six areas of basic work activity and a moderate limitation in the remaining seven areas of basic work activity.  Tr. 299.  He stated that the current impairments were not the primary result of substance use in the past 60 days and that the impairments would persist following 60 days of sobriety. Tr. 299.  He stated that a chemical dependency assessment or treatment was not recommended.  Tr. 299.  In the Prognosis/Plan section, he stated that Plaintiff would be impaired with available treatment for six to twelve months and stated that treatment recommendations included inpatient chemical dependency treatment with sober housing and aftercare, counseling, and medication management.  Tr. 299.

On March 6, 2018, Dr. Petaja completed a Review of Medical Evidence form for DSHS after reviewing the 2010 evaluation from Dr. Moore and the 2018 evaluation from Dr. Widlan.  Tr. 277-81, 296.  She stated that substance abuse was not deemed primary, but did not provide any opinion as to whether Plaintiff's impairment would persist following sixty days of sobriety.  Tr. 277, 281, 296.  She provided the same functional opinion as Dr. Widlan with six marked limitations and seven moderate limitations.  Tr. 280.

On September 17, 2018, Dr. Burdge completed a Review Medical Evidence for DSHS after reviewing the evaluation of Dr. Widlan, the Review of Medical Evidence form from Dr. Petaja, and some treatment notes for 2018.  Tr. 314-19. He stated that it was not likely that substance use was Plaintiff's primary impairment, but failed to state whether Plaintiff's impairments would be expected to persist following sixty days of sobriety.  Tr. 314.  Dr. Burdge provided a functional evaluation opinion that Plaintiff had a marked limitation in six areas of basic functioning, a moderate limitation in five areas of basic functioning, and an indeterminable severity of impairment in two areas of basic functioning.  Tr. 316.

The ALJ found all the opinions from DSHS to be not persuasive.  Tr. 30-31. First, the ALJ provided a general statement rejecting all the opinions because "under our Agency regulations we consider the decisions of other agencies and nongovernmental agencies inherently neither valuable nor persuasive."  Tr. 30. The ALJ is correct that the new Regulations state decisions by other government agencies and nongovernmental entities are inherently neither valuable nor persuasive to the issue of whether a claimant is disabled under the Social Security Act.  20 C.F.R. § 416.920b(c).  However, 20 C.F.R. § 416.904 makes it clear that the ALJ is not required to even discuss State agency determinations in his decision, he is required to "consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive." Therefore, the ALJ was not required to discuss the ultimate finding that Plaintiff

was disabled under DSHS rules, he was required to discuss the medical opinions

used to support the DSHS determinations.  As such, this was not a sufficient reason

to find the DSHS opinions not persuasive.  However, any error resulting from this

determination is harmless because the ALJ provided other sufficient reasons

supported by substantial evidence to find these opinions not persuasive.  *See*

*Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the

record that the . . . error was inconsequential to the ultimate nondisability

determination.").

Second, the ALJ found that all of the DSHS evaluators and reviewers did not

review any treatment records.  Tr. 30.  While the Regulations make it clear that

supportability and consistency are the most important factors to be considered

when determining persuasiveness, how familiar a source is with other evidence in

the claim can also be considered.  20 C.F.R. § 416.920c(c)(5).  Therefore, this

factor supports a finding that the opinions are not persuasive for all the DSHS

opinions, except that of Dr. Burdge, who reviewed some treatment records.

Third, the ALJ found that all of the DSHS evaluations and reviews were

inconsistent with the minimal difficulties found on mental status examinations and

the observations of normal mood and affect or some mild deficits related to anxiety

frustration, and/or distress.  Tr. 31.  This general determination was not supported

by substantial evidence.  Here, the 2018 mental status examinations showed some

abnormalities, but the 2019 mental status examination was normal except for

performing serial sevens.  Tr. 300-301, 355-56.  Additionally, in the limited

treatment notes that were not associated with DSHS records, Plaintiff appeared

with deficits related to anxiety, frustration, or distress.  Tr. 358 ("euthymic to

anxious mood with congruent affect"); Tr. 373 ( Plaintiff " had a frustrated to

distressed mood with congruent affect); Tr. 376 ("anxious mood with congruent

affect"); Tr. 382 ("distressed mood to euthymic affect").  However, this

unsupported general statement amounts to harmless error as the ALJ provided

specific reasons to reject the opinions as discussed below.

Fourth, the ALJ found that Dr. Widlan did not discuss the basis or support

for his assessment and he provided an inconsistent opinion about whether or not

Plaintiff required substance abuse treatment.  Tr. 30-31.  Dr. Widlan did complete

a mental status exam which showed depression, restricted affect, paranoid ideation,

mildly impaired memory, impaired concentration, impaired abstract thought, and

impaired insight and judgment.  Tr. 300-01.  Therefore, the ALJ's blanket

statement that the Dr. Widlan failed to discuss the basis for the assessment without

more explanation as to how the mental status examination failed to support the

assessment is not specific enough for a meaningful review and cannot support a

finding that the opinion is not persuasive.  However, the ALJ's finding that the

opinion was internally inconsistent regarding whether Plaintiff's treatment should

include substance abuse is supported by substantial evidence.  Dr. Widlan checked

the box indicating that chemical dependency assessment or treatment was not

recommended, then later stated that inpatient chemical dependency treatment with sober housing and aftercare were treatment recommendations. Tr. 299. This is significant in finding the opinion not persuasive because Dr. Widlan stated that Plaintiff's impairments would be at the severity opined for six to twelve months with available treatment. Tr. 299. Therefore, it is unclear if Dr. Widlan is opining that Plaintiff would improve within six to twelve months with substance abuse treatment. Therefore, the ALJ's reason for finding the opinion not persuasive is supported by substantial evidence.

Fifth, the ALJ found the opinion of Dr. Petaja was not persuasive because she relied on the opinions of Dr. Moore and Dr. Widlan, which the ALJ also found not persuasive. Tr. 31. Dr. Petaja only reviewed the opinions from Dr. Moore and Dr. Widlan. Tr. 277, 296. She did not examine Plaintiff herself. The ALJ found that the opinions of Dr. Moore and Dr. Widlan were not persuasive. Tr. 30-31. This Court finds that the ALJ's treatment of Dr. Widlan's opinions were supported by substantial evidence and Plaintiff did not challenge the treatment of Dr. Moore's opinion in the RFC determination. Therefore, the ALJ will not disturb the ALJ's treatment of Dr. Petaja's opinion.

Sixth, the ALJ found the opinion of Dr. Budge to be not persuasive because he did not provide support or basis for the limitations suggested. Tr. 31. Here, Dr. Burdge provided an RFC opinion different from Dr. Widlan and Dr. Petaja without any explanation as to why the opinion differed. Tr. 316. Therefore, the ALJ's

determination supports a finding that the opinion was neither well supported nor

consistent in the record.  As such, the Court will not disturb the ALJ's treatment of

the opinion.

In conclusion, the ALJ provided legally sufficient reasons to determine the

opinions from DSHS were not persuasive.  Any errors on the part of the ALJ were

harmless because he provided at least one reason to find each opinion not

persuasive.  *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is

clear from the record that the . . . error was inconsequential to the ultimate

nondisability determination.").

### C.    Patrick Metoyer, Ph.D.

On March 31, 2019, Dr. Metoyer evaluated Plaintiff and reviewed treatment

records.  Tr 353-57.  Plaintiff reported no current marijuana or other illicit

substances and specifically stated that he quit using methamphetamine two years

prior.  Tr. 355.  Dr. Metoyer diagnosed him with panic disorder, PTSD, major

depressive disorder, and ADHD.  Tr. 356.  Dr. Metoyer opined that Plaintiff had a

mild impairment in memory, a "likely" moderate impairment in the ability to

interact with co-workers and the public, a moderate impairment in the ability to

maintain regular attendance in the workplace, a "likely" moderate impairment in

the ability to completed a normal workday or work week without interruption from

psychological symptoms, and a markedly impaired in the ability to deal with the

usual stress encountered in the workplace if it involves persistence activity,

complex tasks, task pressure, or interacting with other individuals.  Tr. 357.

The ALJ found this opinion not persuasive for four reasons:  (1) Plaintiff denied the use of substances while he was using methamphetamine; (2) Plaintiff stated he had significant physical difficulties which was inconsistent with Plaintiff's hearing testimony; (3) Dr. Metoyer failed to describe any specific limitation that would be disabling; and (4) Dr. Metoyer did not provide any explanation, support, or basis for the opined ratings.  Tr. 30.

The ALJ's first reason for finding the opinion not persuasive, that Plaintiff denied the use of substances while he was using methamphetamine, is supported by substantial evidence.  Plaintiff told Dr. Metoyer that he had not used methamphetamine for two years.  Tr. 355.  However, in August of 2018, Plaintiff was admitted to substance abuse treatment and reported that he was using methamphetamines daily.  Tr. 400-01.  Additionally, Plaintiff reported that he left the inpatient treatment program early and was continuing to use substances on December 5, 2018.  Tr. 350.  Therefore, there is evidence that Plaintiff was using methamphetamines on a daily basis within the two years of Dr. Metoyer's evaluation.

Plaintiff argues that there is no evidence in the record that Plaintiff was using substances at the time of the evaluation, citing a February 2019 treatment note stating he was not currently using methamphetamines and asserting that there is no evidence of substance use again until August of 2019.  ECF No. 12 at 16.  On

February 26, 2019, Plaintiff reported to his therapist that he had stopped using methamphetamines. Tr. 363. Then, on August 2, 2019, Plaintiff reported that he had used meth a week prior. Tr. 390. However, regardless of Plaintiff's use at the time of the evaluation, this false report of substance use combined with Plaintiff's false report of physical impairments, *see infra*., demonstrates that Plaintiff was not being forthcoming with Dr. Metoyer and the opinion cannot be found to be supported. Therefore, the ALJ did not err in finding that the opinion was not persuasive.

The ALJ's second reason for finding the opinion not persuasive, that Plaintiff stated he had significant physical difficulties which was inconsistent with Plaintiff's hearing testimony, is supported by substantial evidence. During the evaluation, Plaintiff stated that he had health difficulties, including chronic pain symptoms, that impacted his day-to-day functioning. Tr. 354. Dr. Metoyer stated that Plaintiff "appears to have some potential physical limitations that would better be assessed by a medical provider." Tr. 357. However, at the hearing, Plaintiff testified that he had no physical impairments that would limit his ability to work. Tr. 47. This further demonstrates that Plaintiff was not being forthcoming with Dr. Metoyer and the opinion cannot be supported. Therefore, the ALJ did not err in finding that that opinion was not persuasive.

The ALJ's third reason for finding the opinion not persuasive, that Dr. Metoyer failed to describe any specific limitation that would be disabling, is

inconsequential to the finding of persuasiveness.  The ALJ appears to be asserting that even if Dr. Metoyer's opinion were found persuasive, the opinion does not present a work preclusive RFC.  Tr. 30 ("Dr. Metoyer's opinion does not describe any specific limitation that would be disabling").  Here, regardless of the opinion's ultimate impact on the RFC determination, the ALJ found it not persuasive.

The ALJ's fourth reason for finding the opinion not persuasive, that Dr. Metoyer did not provide any explanation, support, or basis for his opined ratings, is not supported by substantial evidence.  Here, the ALJ specifically tied his opined impairment rating to a diagnosed impairment: "Due to anxiety, PTSD, mood symptoms, ADHD symptoms, and tendency to isolate himself from others, his ability to maintain regular attendance in the workplace is moderately impaired."  Tr. 357.  However, any error resulting from this reason is harmless because the ALJ provided a sufficient reason to find the opinion not persuasive.  *See Tommasetti*, 533 F.3d at 1038 (An error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination.").

## 2.    Plaintiff's Symptom Statements

Plaintiff argues that the ALJ erred in the treatment of his symptom statements.  ECF No. 12 at 17-21.

An ALJ engages in a two-step analysis when evaluating a claimant's testimony regarding subjective pain or symptoms.  "First, the ALJ must determine

whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "The claimant is not required to show that his impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Id*.

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ stated that Plaintiff's statements about intensity, persistence, and limiting effects of his symptoms "are not entirely consistent with the medical evidence and other evidence in the record." Tr. 27. The ALJ gave six reasons for rejecting Plaintiff's symptom statements: (1) he inconsistently described his symptoms; (2) he had minimal or conservative treatment for his mental health conditions; (3) there was evidence he was attempted to mislead evaluators; (4) the record shows his symptoms improved when he abstained from drug use; (5) his statements were inconsistent with his reported activities; and (6) his performance on mental status examinations and observation by providers were inconsistent with his allegations. Tr. 27-29.

ORDER ~ 30

The ALJ's first reason for rejecting Plaintiff's symptom statements, that he inconsistently described his symptoms, is specific, clear and convincing. In weighing a claimant's symptom statements, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). While applying for benefits, Plaintiff alleged auditory hallucinations, "I hear voices that makes [sic] me want to respond to them." Tr. 235. However, during his consultative evaluation with Dr. Metoyer, Plaintiff denied such hallucinations. Tr. 353. Likewise, during his consultative evaluation with Dr. Metoyer, Plaintiff alleged physical impairments, including chronic pain. Tr. 354. However, at the hearing, Plaintiff testified that he had no physical impairments that impacted his ability to work. Tr. 47. Therefore, the ALJ's determination is supported by substantial evidence and meets the specific, clear and convincing standard.

The ALJ's second reason for rejecting Plaintiff's symptom statements, that he had minimal or conservative treatment for his mental health conditions, is specific, clear and convincing. Conservative treatment can be "sufficient to discount a claimant's testimony regarding [the] severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007). Likewise, noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 C.F.R. §

416.930; *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The ALJ found that Plaintiff had minimal and conservative treatment for his mental health conditions. Tr. 28. Additionally, the ALJ noted that Plaintiff failed to follow through with the treatment that was prescribed. Tr. 28. The ALJ noted that much of Plaintiff's treatment was in the context of establishing and maintaining welfare benefits, the treatment records do not demonstrate significant mental health symptoms, and Plaintiff refused to take psychiatric medication despite them being advised. Tr. 28. The only mental health treatment in the record is from Central Washington Comprehensive Mental Health and is limited to August through December of 2018 through January of 2020. Tr. 314-52, 358-38. However, the last completed treatment session by Plaintiff was in August of 2019 and he was later discharged from treatment. Tr. 397. Medication management was advised throughout the record. Tr. 285, 299, 323. However, Plaintiff never took medication. Tr. 354. Therefore, the ALJ's determination that Plaintiff's treatment was conservative and he refused medication is supported by substantial evidence and meets the specific, clear and convincing standard.

The ALJ's determination that Plaintiff failed to follow through with described treatment is not specific, clear, and convincing. The period in which Plaintiff refused treatment was in 2010 and predated the alleged onset date. Tr. 285 ("Client is currently enrolled in Sound behavioral healthout, [sic] which he has not been participating in."). Therefore, this reason does not meet the specific,

clear, and convincing standard.

The ALJ's third reason for rejecting Plaintiff's symptom statements, that there was evidence he attempted to mislead evaluators, is specific, clear and convincing. In weighing a claimant's symptom statements, the ALJ may consider "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. In 2010, Plaintiff's testing showed a low verbal and performance IQ. Tr. 282. However, Dr. Moore stated that Plaintiff engaged in some impression management or limiting his effect in his IQ testing. Tr. 285. While this testing predates that alleged onset date, combined with Plaintiff's inconsistent statements regarding drug use, it shows a pattern of misleading evaluators. Therefore, this meets the specific, clear and convincing standard.

The ALJ's fourth reason for rejecting Plaintiff's symptom statements, that the record shows his symptoms improved when he abstained from drug use, is specific, clear and convincing. As discussed at length above, the record supports the finding that Plaintiff's symptoms improved with abstinence from substance use.

The ALJ's fifth reason for rejecting Plaintiff's symptom statements, that his statements were inconsistent with his reported activities, is not specific, clear, and convincing. A claimant's daily activities may support an adverse credibility

finding if the claimant's activities contradict his other testimony.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (citing *Fair*, 885 F.2d at 603).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.  Here, the ALJ found that Plaintiff's reported activities of going to the store and having minimal social interactions were inconsistent with his reports that his social limitations precluded him form working.  Tr. 28.  The Ninth Circuit has warned ALJs against using simple household activities against a person when evaluating their testimony:

> We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.

*Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014).  Here, Plaintiff's ability to go to the store was not sufficient to support the ALJ's determination.

The ALJ's sixth reason for rejecting Plaintiff's symptom statements, that his performance on mental status examinations and observation by providers were inconsistent with his allegations, is specific, clear and convincing.  An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's testimony.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009).  During the face-to-face interview with a Social Security facilitator, Plaintiff had no difficulty understanding, concentration, or answering questions.  Tr. 187.  In the March 2018 evaluation,

Plaintiff's Mental Status Examination showed that he could following a simple three-step command. Tr. 301. In the March of 2019 evaluation, Plaintiff's Mental Status Examination was normal and found that Plaintiff was able to follow a three-step command. Tr. 355-56.

In conclusion, the ALJ provided specific, clear and convincing reasons to support his determination that Plaintiff's symptom statements were not reliable. *Carmickle*, 533 F.3d at 1163 (upholding an adverse credibility finding where the ALJ provided four reasons to discredit the claimant, two of which were invalid); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (affirming a credibility finding where one of several reasons was unsupported by the record); *Tommasetti*, 533 F.3d at 1038 (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

## CONCLUSION

A reviewing court should not substitute its assessment of the evidence for the ALJ's. *Tackett*, 180 F.3d at 1098. To the contrary, a reviewing court must defer to an ALJ's assessment so long as it is supported by substantial evidence. 42 U.S.C. § 405(g). After review, the court finds the ALJ's decision is supported by substantial evidence and free of harmful legal error.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 12, is **DENIED**.

2.  Defendant's Motion for Summary Judgment, ECF No. 14, is

**GRANTED**.

The District Court Executive is hereby directed to enter this Order and

provide copies to counsel, enter judgment in favor of the **Defendant**, and **CLOSE**

the file.

**DATED** January 27, 2022.

_____

LONNY R. SUKO

Senior United States District Judge